IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANN HENEGHAN,

                          Plaintiff,              Case NO. 09 C 0759

          v.
                                                  Hon. Harry D. Leinenweber
CITY OF CHICAGO, and DONALD
WOJCIK, in his personal
capacity,

                          Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

On February 5, 2009, Plaintiff Ann Heneghan filed the current four count complaint against Defendants City of Chicago and Donald Wojcik alleging (Count 1) gender discrimination and sexual harassment in violation of Title VII by the City of Chicago; (Count 2) retaliation in violation of Title VII by the City of Chicago; (Count 3) unequal treatment in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 by all Defendants; and (Count 4) retaliation in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 by all Defendants.

Defendant City of Chicago moves for Summary Judgment on all counts and Defendant Wojcik joins the motion. Defendants' Motion is granted in part and denied in part.

# I. BACKGROUND

## A. Facts

Plaintiff Ann Heneghan (hereinafter, "Plaintiff" or "Heneghan") was employed with Defendant City of Chicago (the "City") as an Aviation Security Officer in the City's Department of Aviation from May 11, 1998 to May 21, 2007.  Defendant Donald Wojcik ("Wojcik") has worked in the Department of Aviation since October 1, 1991, and holds the title of Aviation Security Sergeant. As a Sergeant, Wojcik shared in the rotating duty of scheduling officers and assigning positions for a shift with the other sergeants, and supervised officers by visiting their posts and ensuring they were performing their duties.

Heneghan crossed paths with Wojcik since both worked at O'Hare International Airport, although the parties dispute the frequency with which the two interacted.  From 1998-2001, Heneghan worked the third watch (1:30 p.m. - 10:00 p.m.) and Wojcik worked on the second watch (5:30 a.m. - 2:00 p.m.).  However, Heneghan would occasionally work overtime shifts on the second watch.  In January of 2002, Heneghan moved to the second watch where she stayed until the end of her employment with the City.  For one to two years of her time on second shift, Heneghan worked an office job with Lieutenant Johnson ("Johnson") where she was rarely exposed to Wojcik.

On those situations in which the two interacted, Heneghan alleges a number of instances of inappropriate conduct by Wojcik. Heneghan alleges that Wojcik made disparaging remarks about women in general, including using the term "bitch" or "cunt," talking about single mothers "shitting out babies," complaining that his pregnant niece would not marry the father of the child, and discussing his preference between real and fake breasts. Heneghan alleges that Wojcik made remarks about female co-workers, such as telling Heneghan that a female officer using a breast pump was "milking herself," suggesting that female officers had babies to take advantage of the maternity policy, assigning Officer Calderon a special post because it was her time of the month and he did not want her to "bleed out everywhere," and discussing Calderon's body. Heneghan also alleges that Wojcik made inappropriate remarks directly to her or about her, such as referring to her as a "house cat" or "[Lt.] Johnson's girl," telling her when she was pregnant that she "should get an extra stitch" in her vagina to provide her husband with more enjoyment, and calling her "Officer No Butt."

On July 14, 2006, Heneghan filed a formal written complaint with the Department of Aviation, which referred the complaint to the City's Sexual Harassment Office (the "SHO"). Heneghan went to downtown Chicago for an intake interview with the SHO on July 21, 2005. Before she left work for this interview, Heneghan alleges that Wojcik asked why she was going downtown that day and followed her around work in a way that made Heneghan uncomfortable.

On October 28, 2006, Heneghan's mother, who was also an Aviation Security Officer, told Heneghan that Wojcik had asked if Heneghan "dropped a dime on him," which meant filed a complaint about him. Heneghan's mother did not answer the question, and Wojcik became angry and allegedly said he was putting Heneghan "in his book," which Heneghan took as a threat to her safety.

After this date, Heneghan used sick time and vacation time so that she would not have to return to work with Wojcik. Heneghan requested a job placement which guaranteed no contact with Wojcik. The City was unable to transfer Wojcik to Midway Airport because Wojcik could not commute to Midway for medical reasons. Instead, when Heneghan ran out of sick time and vacation time, the City transferred Wojcik to the first watch so Heneghan could work the second watch without encountering Wojcik. The City also offered Heneghan a transfer to the third watch to avoid or lessen contact with Wojcik. Heneghan requested a leave of absence based on a "Hostile Work Place," which was rejected, and the City informed Heneghan that she must return to work or be discharged. Heneghan did not return to work and Commissioner of Aviation Nuria Fernandez discharged Heneghan because she was absent from work without leave.

## B.  Procedure

On November 20, 2006, Heneghan filed a charge with the Equal Employment Opportunity Commission (the "EEOC") alleging discrimination based on sex and retaliation after reporting

discrimination. On May 29, 2007, Heneghan filed a second charge with the EEOC, again alleging discrimination based on sex and retaliation after reporting discrimination. The Department of Justice issued Notices of Right to Sue for these two charges on January 22 and 29, 2009, respectively. Heneghan filed a four-count Complaint against the City, Wojcik, and Fernandez on February 5, 2009. On May 28, 2009, this Court dismissed Defendant Fernandez from the case then dismissed the claims for punitive damages against the City and the claims against Wojcik in his official capacity. This left Heneghan's compensatory claims against the City and her claims against Wojcik in his personal capacity, which are the subject of the present motion for summary judgment.

## II.  **LEGAL STANDARD**

Summary judgment should be granted when the admissible evidence shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists only if there is sufficient evidence, viewing all the facts and inferences in a light most favorable to the non-movant, for a jury to return a verdict for that party. *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). Courts "apply the summary judgment standard with special scrutiny to employment discrimination cases, which often turn on issues of intent and

credibility." *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002).

### III.  ANALYSIS

Defendants seek summary judgment on all four counts, which will be considered in turn.

### A.  Title VII Gender Discrimination and Sexual Harassment

In Count 1, Plaintiff alleges that the City subjected her to gender discrimination and a sexually hostile work environment.  For this count, the Court must first determine the period of time at issue and then the discrimination claims at issue.  After these two inquiries, the Court will address the merits of the Title VII claim.

### 1.  Limitations Period

The first issue that must be decided is what time period Plaintiff can reference while making her case.  The City argues that conduct occurring more than 300 days before Plaintiff filed her first EEOC is time barred for Title VII claims.  Both parties have stated that the limitations period in this case is 300 days. *See Turner v. The Saloon, Ltd.*, 595 F.3d 679, 684 n.5 (7th Cir. 2010).  "In Illinois, an individual must initiate his hostile environment claim by filing an EEOC charge within 300 days of the alleged harassment." *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 701 (7th Cir. 2001); 42 U.S.C. § 2000e-5(e).  A claim based on conduct occurring before this 300 day limitations period

is barred.  *Speer v. Rand McNally & Co.*, 123 F.3d 658, 662 (7th Cir. 1997).

Plaintiff responds that the continuing violation doctrine is an exception which permits consideration of events occurring outside the limitations period for the hostile work environment claim in this case.  A hostile work environment claim alleges repeated conduct which collectively forms a continuing violation of Title VII and therefore a "single unlawful practice."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  This single unlawful practice can begin before the limitations period and end during the limitations period.  In such a case, all incidents comprising the hostile work environment claim are considered, including those outside the limitations period, as long as one act which comprises this claim occurred within the limitations period. *Id.* at 117-18.  There is no requirement that Plaintiff must have reasonably failed to perceive the pre-limitations period conduct as discriminatory.  *Id.* at 117 n. 11; *see Turner*, 595 F.3d at 684-85.

In her brief, Plaintiff states that this case involves a hostile work environment rather than a discrete act of sexual harassment.  With this characterization in mind, the first step is to determine the limitations period.  Plaintiff filed her first EEOC charge on November 20, 2006, so the limitations period starts 300 days before that on January 24, 2006.  During this limitations period, Heneghan alleges that a number of incidents occurred:

Wojcik discussed Calderon's breasts, talked about real versus fake breasts, and referred to Heneghan as "Officer No Butt." These incidents are part of Heneghan's hostile work environment claim, and at least one act occurred within the limitations period, so the continuing violation doctrine permits consideration of all the incidents making up Heneghan's claim regardless of whether the incidents occurred during the limitations period.

### 2. Discrimination Claims

The next issue is to determine what discrimination claims are being pursued. Count 1 of the complaint seeks a finding that Plaintiff was "subjected to gender discrimination in violation of Title VII" as well as a finding that "she was subjected to a sexually hostile working environment in violation of Title VII." The City argues that Plaintiff waived her gender discrimination claim in favor of claiming only a sexually hostile working environment.

It is not clear from the record whether Plaintiff intends to present a gender discrimination claim separate from her hostile work environment claim. A "sexually hostile working environment" is a form of gender discrimination. *See, Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998). The Complaint itself makes this point when it notes that "Plaintiff was subjected to this harassment because of her sex (female)."

Regardless of Plaintiff's intent, the Court can provide clarity on this point.  A reading of the Complaint and briefs for the present motion give no indication of any discrimination separate from the harassment and the City's handling of the issue. For example, Plaintiff has not alleged that she was given inferior duties, denied a promotion, denied benefits, or terminated because of her gender.  To the extent that Plaintiff intended a gender discrimination claim independent of her claims related to sexual harassment and a hostile working environment, such a claim is dismissed for failure to demonstrate a genuine issue of material fact.  *See, Bell v. City of Chicago*, No. 03 C 2117, 2004 U.S. Dist. LEXIS 25889, at *41-42 (N.D. Ill. Dec. 17, 2004)*.*

### 3.  *Merits of Title VII Discrimination Claim*

Next, the City challenges the merits of Plaintiff's Title VII hostile work environment claim.  To survive summary judgment on such a claim, Plaintiff must show that (1) the harassment was because of her sex, (2) the conduct was so severe or pervasive that it created a hostile working environment, and (3) there was a basis for employer liability.  *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

### a.  *Harassment Based on Sex*

The City argues that Wojcik's conduct was not based on sex because it was inflicted equally upon both sexes.  The Seventh Circuit has noted that "because Title VII is premised on

eliminating *discrimination*, inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit." *Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. at 80.

The parties agree that many of Wojcik's comments were inflicted on both sexes in the sense that both men and women heard them, but that does not end the inquiry. The content of the comments must also be considered to determine if it disadvantaged women differently than men. *Compare McHugh v. City of Chicago*, No. 98 C 2245, 2001 U.S. Dist. LEXIS 728, *21-22 (N.D. Ill. Jan. 23, 2001), *with Holman*, 211 F.3d 399. Plaintiff alleges that Wojcik used derogatory terms when referring to females, discussed female officers in a sexual manner, claimed that female officers got pregnant so they could receive leave from work, and told Plaintiff to get an extra stitch in her vagina to increase her husband's pleasure. Even if these comments were made to both men and women, the content of the comments is uniquely applicable to women. While the City may argue that Wojcik was equally offensive to both sexes, and thus did not discriminate, Plaintiff has pointed out at least some comments which uniquely impact women and may be discriminatory. There is a genuine issue as to whether Wojcik's

conduct, taken as a whole, was just offensive or if it was
harassment based on sex.  A jury must settle this disagreement.

b.  *Sufficiently Severe or Pervasive*

The City argues that Wojcik's conduct was not sufficiently
severe or pervasive to create a hostile work environment.  To
support a hostile work environment claim, harassment must be
subjectively and objectively offensive and rise to the level that
it alters the conditions of employment and creates an abusive
working environment.  *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840
(7th Cir. 2009).  It is important to distinguish between "merely
vulgar and mildly offensive" conduct, which Title VII does not
reach, and "deeply offensive and sexually harassing" conduct, which
Title VII prohibits.  *Baskerville v. Culligan Int'l Co.*, 50 F.3d
428, 431 (7th Cir. 1995).  "It is not a bright line, obviously,
this line between a merely unpleasant working environment on the
one hand and a hostile or deeply repugnant one on the other." *Id.*
Some factors which are relevant to this line drawing include
whether the harassment included physical contact, whether it was
directed at the plaintiff, how often and over what length of time
the harassment occurred, and whether threats or coercion were
intertwined with the harassment.  *Id.* at 431; *Hostetler v. Quality
Dining, Inc.*, 218 F.3d 798, 806 (7th Cir. 2000).

Physical contact, especially with intimate areas of the body,
increases the severity of harassing conduct.  *Turner,* 595 F.3d at

685-86.  Plaintiff made no allegations of physical contact, so it is not a factor in this case.

"Second hand harassment," harassment directed at others and not the plaintiff, is relevant conduct but the impact is not as great as harassment directed at the Plaintiff. *Gleason v. Mesirow Fin.*, 118 F.3d 1134, 1144 (7th Cir. 1997).  A significant portion of the conduct in this case was second-hand harassment.  Plaintiff witnessed Wojcik make inappropriate comments about the bodies of other female officers and their pregnancies as well as use derogatory terms in reference to other females, but Wojcik was often not speaking to or about Plaintiff.  However, some conduct was clearly directed at Plaintiff:  Wojcik telling Plaintiff to get an extra stitch in her vagina, referring to Plaintiff as a "house cat," and calling her "Officer No Butt."

Frequent harassment is relevant to a question of pervasiveness, but "there is no 'magic number' of incidents that give rise to a cause of action." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir. 1994).  Plaintiff claims that she was subjected to Wojcik's harassment for years, and that almost every interaction she had with him was unpleasant.  While the City argues that contact between Plaintiff and Wojcik was rare for many of the years in question, the parties have both listed a significant number of specific instances of inappropriate conduct by Wojcik.  The combination of these instances and Plaintiff's testimony

provides reasonable evidence of a high frequency of inappropriate conduct.

Intimidating and threatening conduct is another important factor which can render conduct more severe or pervasive. *See Robinson v. Sappington*, 351 F.3d 317, 330 (7th Cir. 2003). Plaintiff alleges that Wojcik followed her around the day she went to downtown Chicago for an intake interview about her complaint and asked her why she was going downtown. Wojcik also confronted Plaintiff's mother about the complaint, became angry during this exchange, and allegedly said he was putting Plaintiff "in his book." Plaintiff interpreted this as a threat, reported it to her superiors, went home for the day, and never went back to work. The parties mention no further work related contact or comments between Wojcik and Plaintiff after this confrontation.

In sum, the above factors indicate that the question of whether the conduct was severe or pervasive is not so clear that it can be ruled on as a matter of law. While there was no physical contact and limited comments directed at Plaintiff, there are allegations that the conduct occurred often in Plaintiff's presence, over a long period of time, and culminated in a physical threat. It is up to a jury to weigh this evidence to determine if the conduct was severe or pervasive.

*c. Basis for Employer Liability*

The City argues that Wojcik was not Plaintiff's supervisor and so Plaintiff is required to prove that the City was negligent in order to hold it liable as an employer. Plaintiff maintains that Wojcik was her supervisor and so the City is strictly liable for harassment. "An employer is liable for a hostile work environment claim if the plaintiff's supervisor created the hostile work environment, or if a co-worker created the hostile work environment and the employer was 'negligent either in discovering or remedying the harassment.'" *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006).

The first issue is whether Wojcik was Plaintiff's supervisor. A supervisor is someone with the authority to affect directly the terms and conditions of employment, such as the power to hire, fire, demote, promote, transfer, or discipline an employee. *Parkins v. Civil Constructors, Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998); *see, Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002). Marginal discretion, such as the authority to direct work, provide input on performance evaluations, and conduct training is not sufficient on its own to qualify someone as a supervisor. *Hall,* 276 F.3d at 355.

The record indicates that Plaintiff and Wojcik worked on the same shift only for the last few years of her employment with the City. During this period, Wojcik had the authority to assign daily

posts for officers, including Plaintiff, but this scheduling authority was rotated among the sergeants. Wojcik's duties during his shift included making sure that each officer was at his post and doing his job. Wojcik also participated in reviews of Plaintiff's job performance.

Wojcik was similar to the foremen in *Parkins* or the set-up operator in *Hall*, who "supervised" employees in their tasks, but had no real authority beyond ensuring these tasks were performed properly and reporting any problems to managers. *See Parkins*, 163 F.3d at 1034; *Hall*, 276 F.3d at 355-56. Wojcik's marginal participation in Plaintiff's review process is insufficient to render him a supervisor. *See, Bray v. City of Chicago*, No. 01 C 7770, 2002 U.S. Dist. LEXIS 20889 (N.D. Ill. Oct. 29, 2002). Wojcik was not Plaintiff's supervisor merely because he outranked her. *See, Durkin v. City of Chicago*, 199 F.Supp.2d 836, 847 (N.D. Ill. 2002). The City admits that Wojcik had the authority to orally discipline Plaintiff, but contends that this was the limit of his authority. Plaintiff did not bring forth any evidence that Wocjik had the authority, or apparent authority, to fire, demote, or transfer her. *See, Sommerfield v. City of Chicago*, No. 06 C 3132, 2010 U.S. Dist. LEXIS 98898, at *31 (N.D. Ill. Sept. 20, 2010). In the end, Fernandez (not Wojcik) terminated Plaintiff's employment. For purposes of Title VII analysis, Wojcik is a co-worker and not a supervisor.

The next issue is whether the City is liable for the co-worker harassment. The City is liable for co-worker harassment if it was "negligent in either discovering or remedying the harassment." *Hall*, 276 F.3d at 356. The parties dispute when the City discovered the harassment, but the City was clearly on notice by the time of Plaintiff's formal complaint.

When an employer is on notice of harassment, it must take reasonable steps to remedy the harassment. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). In remedying harassment, "what is reasonable depends on the gravity of the harassment." *Baskerville*, 50 F.3d at 432. "[A]n employer is required to take more care, other things being equal, to protect its female employees from serious sexual harassment than to protect them from trivial harassment." *Id.* In this case, Plaintiff alleges that the City's response was inadequate because it took four months to complete the investigation and the solution was inadequate because it failed to provide a non-hostile work environment. The City alleges that four months was a reasonable time for investigation and that its offer to change Plaintiff's work location or shift adequately separated her from Wojcik and provided a non-hostile work environment.

As a matter of law, it is not clear whether placing Wojcik on a separate shift from Plaintiff, or the offer to transfer Plaintiff to Midway, was a reasonable remedy. The answer to this question

depends on the balancing of a number of factors, such as the City's constraint in transferring Wojcik to Midway, the likelihood of future encounters between Plaintiff and Wojcik, and the expected content of such encounters. A jury may find that the situation required a very extensive remedy if Wojcik remained a physical threat to Plaintiff. Or, a jury may find that only a very minor remedy was required if Wojcik's remark about putting Plaintiff "in his book" was misinterpreted, harmless, or did not happen. *See, Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 704 (7th Cir. 2001) (actions were too "petty and tepid to constitute a material change in the terms and conditions of [Plaintiff's] employment"). The gravity of the situation, which sets the reasonableness of the remedy, depends on the credibility of the witnesses to the alleged conduct. Weighing the credibility of witnesses is the province of a fact finder and is not appropriate on summary judgment. *Payne v. Pauley*, 337 F.3d 767, 770-71 (7th Cir. 2003). A jury is required to determine if the City responded reasonably to the harassment. Summary judgment is already denied based on the question of whether the remedy was reasonable, so there is no reason to analyze whether the City was negligent in discovering the harassment.

## B.  Title VII Retaliation

In Count 2, Plaintiff alleges that the City retaliated against her in violation of Title VII by escalating the harassment, denying her a leave of absence, and terminating her after her complaint.

The City argues that Plaintiff fails to show any retaliatory motive for the decisions made by Plaintiff's superiors after she reported the harassment.

A charge of retaliation under Title VII requires a plaintiff to prove (1) she "engaged in a statutorily protected activity," (2) she "suffered an adverse action taken by the employer," and (3) "there was a causal connection between the two." *Lewis v. City of Chicago*, 496 F.3d 645, 655 (7th Cir. 2007). An action is materially adverse if it might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). There is no question that Plaintiff engaged in a protected activity when she filed her formal complaint about Wojcik, so the analysis can proceed to the adverse action element.

The difficulty with Plaintiff's "escalated harassment" argument is that Plaintiff must allege an adverse action taken by the *employer*. Plaintiff cites to *Stutler* for the proposition that retaliatory harassment can constitute an adverse employment action, but that case involved supervisor and not co-worker harassment. *See, Stutler*, 263 F.3d at 703. More on point is *Knox*, which involved co-worker retaliatory harassment. *See, Knox v. Indiana*, 93 F.3d 1327, 1335 (7th Cir. 1996). *Knox* examined whether the employer had notice of the retaliatory harassment and whether it "acquiesced" to the harassment by failing to stop it. *Id.* Under

that analysis, Wojcik's physical threat is not an adverse action by the City.  As soon as it was put on notice of the confrontation, which occurred months after Plaintiff's complaint was filed, the City immediately cooperated with Plaintiff to separate her from Wojcik.  There is no evidence of any further harassment after the confrontation and no evidence that the City encouraged, or acquiesced to, Wojcik's conduct.

Plaintiff contends in her Complaint, but not in the briefing for the present motion, that the City's denial of her leave of absence and her termination were in retaliation for filing a complaint.  Plaintiff fails to bring forth sufficient evidence for this claim.  Seven months after the complaint was filed, and two months after the City shifted Wojcik to the first watch, the City refused Plaintiff's leave of absence and demanded that she return to work on either the second or third watch.  Only after Plaintiff refused to return to work did the City fire her. The City had a valid non-retaliatory reason for firing Plaintiff: she refused to work. Plaintiff has not addressed how this legitimate reason was pretextual. *See, Roby v. CWI, Inc.*, 579 F.3d 779, 786-87 (7th Cir. 2009).

Plaintiff's argument that she refused to work because it remained a hostile place is not persuasive evidence that her termination was in retaliation for her harassment complaint.  A jury may find that the City's remedy was unreasonable and that a

hostile work environment remained, but this is not evidence that an adverse action was taken. In response to Plaintiff's Complaint, the City moved Wojcik to first watch and offered Plaintiff her choice of second or third watch. Demanding that Plaintiff return to work under this arrangement put Plaintiff in a better position than she was before she filed the complaint, even if she believes this remedy did not go far enough. The City's response would not discourage an employee from filing a complaint, as the complaint generated an improvement in work conditions, so it was not a materially adverse action.

Plaintiff fails to bring forward evidence of a materially adverse employment action which is attributable to the City, so summary judgment is granted for the City on Count 2.

### C. Fourteenth Amendment Discrimination

In Count 3, Plaintiff alleges that the City and Wojcik violated her equal protection right to be free from gender discrimination. She seeks redress for this as a constitutional violation under 42 U.S.C. § 1983. The City argues that there is no basis for municipal liability under this *Monell* claim. *See, Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

"A plaintiff may establish municipal liability by showing (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an

allegation that the constitutional injury was caused by a person with final policymaking authority." *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009).

Plaintiff alleges that sexual harassment is a widespread practice in the Department of Aviation. Plaintiff's evidence on this point includes her assertion that Wojcik harassed her for six years, continued to harass her after she made a complaint, and other superior officers failed to report this harassment. The problem with Plaintiff's argument is that she fails to carry her burden of proving that the harassment is *widespread*. Plaintiff has not demonstrated evidence of a number of similar complaints by female officers, a number of male officers who acted similarly to Wojcik, or an indifference to multiple complaints to management. *See, Estate of Moreland v. Dieter*, 395 F.3d 747, 759-60 (7th Cir. 2005) (three incidents did not demonstrate widespread practice); *Bohen v. East Chicago*, 799 F.2d 1180, 1188-89 (7th Cir. 1986) (widespread practice when multiple supervisors harassed multiple women, management officials knew it, and complaints were "addressed superficially if at all"). While she alleges that her verbal complaints were ignored, which the City disputes, she admits that the City has a harassment policy and her written complaint was forwarded to SHO, reviewed, and disciplinary actions were taken against Wojcik for his conduct. The only evidence she brings forth

is her own situation with one co-worker, which does not by itself prove a widespread practice.

Plaintiff also alleges that officials high in the Department of Aviation have showed hostility toward women. It is not clear if Plaintiff intends this as an attempt to prove a constitutional injury by a person with final policymaking authority under *Monell*, but if so, the claim fails. Plaintiff does not bring forth evidence that anyone involved in her case had policy making authority on employment matters. *See, Waters*, 580 F.3d at 581-83.

Plaintiff has not brought forth sufficient evidence of municipal liability for her *Monell* claim, so summary judgment is granted to the City on Count 3. Wojcik did not argue about his personal liability on Count 3, so Count 3 still stands against Wojcik.

### D. Fourteenth Amendment Retaliation

In Count 4, Plaintiff alleges that the City and Wojcik violated her equal protection rights when they retaliated against her after she filed charges of discrimination with the EEOC. She seeks redress for this as a constitutional violation under 42 U.S.C. § 1983.

Defendants argue that a retaliation claim is improper under the Fourteenth Amendment. The right to be free from retaliation is not a general right granted by the Equal Protection Clause. *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287,

1296 n.8 (7th Cir. 1996); *see, Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004) (collecting cases). Instead, Plaintiff's right to be free from retaliation for reporting sexual harassment flows from Title VII. *See, Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989). Plaintiff concedes this point. Summary judgment is granted to Defendants on Count 4.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court rules as follows:

1.     Defendant City of Chicago's Motion for Summary Judgment, joined by Defendant Donald Wojcik, is denied as to Count 1 of Plaintiff's Complaint;

2.     Defendant City of Chicago's Motion for Summary Judgment, joined by Defendant Donald Wojcik, is granted as to Count 2 of Plaintiff's Complaint;

3.     Defendant City of Chicago's Motion for Summary Judgment, joined by Defendant Donald Wojcik, is granted as to the City of Chicago for Count 3 of Plaintiff's Complaint but denied as to Defendant Wojcik; and

4.     Defendant City of Chicago's Motion for Summary Judgment, joined by Defendant Donald Wojcik, is granted as to Count 4 of Plaintiff's Complaint.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:**     December 8, 2010